UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Latalia Seaton<br><br>    Plaintiff,<br><br>  v.<br><br>Experian Information Solutions, Inc., Equifax Information Services, LLC, Celtic Bank, Transportation Alliance Bank, Inc. d/b/a/ TAB Bank, The Bank of Missouri, Perpay, Inc., and First Premier Bank<br><br>    Defendants. | CASE NO. 2:24-cv-13071<br><br>COMPLAINT FOR DAMAGES:<br><br> 1. Violation of Fair Credit Reporting Act; |

Elliot Gale (P85770)
Gale, Angelo, & Johnson, P.C.
2999 Douglas Blvd., Ste. 111
Roseville, CA 95661
916-290-7778
egale@gajplaw.com
Attorney for Plaintiff
Latalia Seaton

COMES NOW Plaintiff Latalia Seaton (hereinafter "Plaintiff"), an individual, based on information and belief, to allege as follows:

**INTRODUCTION**

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681i(a)(2)(A)), 15 U.S.C. § 1681i(a)(4)), and 15 U.S.C. §1681i(a)(5)(A)).

2. Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or incomplete reporting of Plaintiff's accounts with Celtic Bank, Transportation Alliance Bank, Inc. d/b/a/ TAB Bank (Mission Lane), Perpay, Inc., The Bank of Missouri, and First Premier Bank.

3. Defendants are reporting the following inaccurate information after Plaintiff received a bankruptcy discharge:

   a. Celtic Bank is reporting the account is charged off without referencing that it was included/discharged in bankruptcy.

   b. Mission Lane is reporting Plaintiff's account as delinquent with a past-due balance owed rather than listing the account as included and discharged in bankruptcy.

   c. PerPay is reporting Plaintiff's account as delinquent with a past-due balance owed rather than listing the account as included and discharged in bankruptcy.

   d. The Bank of Missouri is reporting the account as charged-off rather than included/discharged in bankruptcy.

   e. First Premier Bank is reporting a balance and past-due balance owed rather than indicating the account was included/discharged in bankruptcy.

4. In addition, Celtic Bank, Mission Lane, Perpay, The Bank of Missouri, and First Premier Bank all failed to update the tradelines to include the bankruptcy notation.

5. Such reporting is wholly inaccurate, misleading, and adversely impacts Plaintiff's credit worthiness.

6. Plaintiff's credit score has been adversely impacted by the reporting; she has been unable to rebuild her credit score and obtain favorable interest rates as a result of the reporting.

7. Third parties have been exposed to the inaccurate tradelines.

8. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

## JURISDICTION & VENUE

9. Plaintiff re-alleges and incorporates herein by reference the allegations in each and every paragraph above, fully set forth herein.

10. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681

11. The venue is proper pursuant to 28 U.S.C. §1391(b)(1).

## GENERAL ALLEGATIONS

12. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for accurate credit reporting in an attempt to purposefully undermine Plaintiff's attempt to improve her FICO Score.

13. In the alternative Plaintiff alleges that each and every Defendant's actions was the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

### FICO, Inc.

14. FICO is a leading analytics software company with its principal headquarters located in Montana. FICO has over 130 patents related to their

analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

15. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

16. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

17. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

18. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.

19. There are 28 FICO Scores that are commonly used by lenders.

20. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).

21. The three largest CRAs are Experian Information Solutions, Inc.; Equifax, Information Services, LLC; and Transunion, LLC.

22. FICO does not control what information is provided in a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.

23. There are five key factors that a FICO Score considers: 1) Payment History; 2) Amount of Debt; 3) Length of Credit History; 4) New Credit; and 5) Credit Mix.

24. Each of the five factors is weighed differently by FICO.

25. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates

4

to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.

26. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score. Public record items such as bankruptcy and foreclosures, are also considered part of a consumer's payment history.

27. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently they occurred, and how many delinquent accounts exist.

28. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

29. FICO Scores are entirely dependent upon information provided by data furnishers to credit reporting agencies.

30. A consumer's FICO score is negatively impacted when an adverse authorized user account is reported.

**Metro 2**

31. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.

32. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.

33. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.
34. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.
35. The CDIA is *the* expert on accurate credit reporting. In support of her allegations Plaintiff avers the following:
    a. The CDIA offers a FCRA certificate program for all CRAs.
    b. The CDIA offers a FCRA awareness program for all CRAs.
    c. The CDIA offers a FCRA Certificate program for DFs.
    d. The CDIA offers a FCRA awareness program for DFs.
    e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.
    f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.
    g. The CDIA developed a credit reporting resource guide for accurately reporting credit.
36. The CDIA's Metro 2 is accepted by all CRAs.
37. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).
38. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.
39. The three main credit bureaus helped draft the CRRG.
40. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.

41. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

42. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

### Consumer Information Indicator

43. When a consumer files for bankruptcy protection certain credit reporting industry standards exist.

44. Certain Metro 2 data is regularly expected and calculated by FICO when determining a consumer's credit worthiness.

45. The Consumer Information Indicator (CII) is a critical field in the Metro 2 Format that indicates a special condition that applies to a specific consumer.

46. Under Metro 2 the CII must be reported only on the consumer to whom the information applies.

47. It is the credit reporting industry standard to report a very specific CII upon the filing of a consumer bankruptcy.

48. In the consumer bankruptcy context CII Metro 2 Code "A" denotes that a petition for Chapter 7 has been filed, is active, but no discharge has been entered.

49. The CII Metro 2 Code "Z" indicates that a bankruptcy petition has been filed but the chapter is undesignated/unknown.

50. The CII Metro 2 Code "E" denotes that a Chapter 7 bankruptcy has been discharged.

51. The CII field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.

52. Failure to update the CII to a "E" on discharged debts results in it appearing that a consumer, like Plaintiff, still owes on the account that was otherwise included and discharged in a bankruptcy.

53. The result lowers a consumer's credit score and makes a consumer appear much less credit worthy.

### Plaintiff's Bankruptcy and Credit Report

54. Plaintiff for bankruptcy protection and received her chapter 7 discharge on October 11, 2023.

55. After Plaintiff completed her bankruptcy and received her discharge Plaintiff ordered a credit report to confirm er creditors properly updated the accounts to reflect the bankruptcy discharge.

56. While most of her creditors updated the accounts to indicate the bankruptcy discharge, Plaintiff noticed a delinquent tradelines from Celtic, Mission Lane, PerPay, TBOM, and First Premier on her post-discharge credit report from Experian, Equifax, and TransUnion.

57. The Celtic, Mission Lane, PerPay, TBOM, and First Premier tradelines indicated that the accounts were charged off and/or contained outstanding past-due balances.

58. None of the tradelines reported any information regarding Plaintiff bankruptcy.

59. In response, Plaintiff disputed the Celtic, Mission Lane, PerPay, TBOM, and First Premier tradelines in January of 2024, indicating that the accounts should be updated to reflect that there was a bankruptcy discharge.

60. Plaintiff believes that the disputed information was transmitted to Celtic, Mission Lane, PerPay, TBOM, and First Premier by the credit bureaus, which would prompt Celtic, Mission Lane, PerPay, TBOM, and First Premier to perform an investigation and respond to Plaintiff's dispute.

61. In late February 2024 Plaintiff ordered supplemental credit reports to verify that the Celtic, Mission Lane, PerPay, TBOM, and First Premier accounts were updated in response to her dispute.

62. However, the disputed accounts were not updated and Celtic, Mission Lane, PerPay, TBOM, and First Premier continued to report to Experian and Equifax that the accounts were not included/discharged in bankruptcy.

**Damages**

63. As a result of the incorrect reporting, Plaintiff has suffered economic loss, diminished credit, and emotional harm.

64. In addition, Plaintiff's fresh start has been irreparably harmed and continues to be harmed by Celtic, Mission Lane, PerPay, TBOM, and First Premier's reporting as that reporting has been disclosed and disseminated to various third-party lenders.

65. Until Celtic, Mission Lane, PerPay, TBOM, and First Premier's reporting has been properly updated Plaintiff continues to appear a severe credit risk.

66. The actions of Experian, Equifax, TransUnion, Celtic, Mission Lane, PerPay, TBOM, and First Premier as alleged herein are acts in violation of the Fair Credit Reporting Act.

## FIRST CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Experian and Equifax)

**Experian and Equifax – Failure to Assure Credit Reporting Accuracy.**

67. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

68. Experian and Equifax violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy

in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

69. Had Experian and Equifax maintained reasonable procedures to assure maximum accuracy Experian and Equifax would never have allowed T Celtic, Mission Lane, PerPay, TBOM, and First Premier to report the account as described herein.

70. As a result of Experian and Equifax's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, denial of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

71. Experian and Equifax allowed the inaccurate information reported by Celtic, Mission Lane, PerPay, TBOM, and First Premier to be transmitted to various third-party lenders, further damaging Plaintiff's credit.

72. The violations described herein by Experian and Equifax were willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

73. Instead of correcting Celtic, Mission Lane, PerPay, TBOM, and First Premier's inaccurate reporting Experian and Equifax allowed the inaccurate and misleading information to continue to be reported and disseminated to third parties.

**Willfulness**

74. The violations described herein by Experian and Equifax were willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

75. In 2012 the FTC reported that 1 in 5 consumer credit reports contains a material error.

76. Such a finding should shock the conscience.

77. When those errors are disputed Experian and Equifax intentionally send consumer disputes to employees who do not live within the continental United States.

78. This is intentionally done to hide and or subvert a consumer's ability to confront individuals directly responsible for approving accurate reporting.

79. Such a policy also inevitably leads to disputes going unresolved as these employees for Defendants Experian and Equifax receive little to know training concerning how to accurately report consumer debt.

80. Instead, these employees are simply instructed to parrot whatever information a data furnisher provides regardless of whether or not that information is accurate. *See Saez v. Trans Union,* LLC, 621 F.Supp. 2d 1074, 1083, 1088 (D.Or. 2007); *Grigoryan v. Experian Info. Sols*., Inc., 84 F. Supp. 3d 1044, 1091 (C.D. Cal. 2014); *Haykuhi Avetisyan v. Experian Info Sols*., No. CV 14-05276-AB (ASX)

81. Experian and Equifax employees are regularly expected to review and approve over 90 disputes per day rendering less than five minutes to review, investigate, and respond to each dispute received.

82. Experian and Equifax have intentionally set up this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

83. Experian and Equifax both allowed Celtic, Mission Lane, PerPay, TBOM, and First Premier to report its accounts with inaccurate information despite specifically being told in the dispute letter why the information Experian and Equifax were reporting was incorrect.

84. Despite Experian and Equifax having actual knowledge of Plaintiff's accounts status (such as the discharge), Experian and Equifax continued to allow Celtic, Mission Lane, PerPay, TBOM, and First Premier to report the account as past-due with an outstanding balance and with no bankruptcy notation.

85. Consequently, Defendants Experian and Equifax are liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

86. In the alternative, Experian and Equifax were at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

87. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## SECOND CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b) / 1681i-(a)1) Against Defendants All Defendants)

**Celtic, Mission Lane, PerPay, TBOM, and First Premier – Failure to Reinvestigate.**

88. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

89. 15 U.S.C. §§ 1681s-2(b) and 1681i-(a)1 prohibits furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

90. Defendants Celtic, Mission Lane, PerPay, TBOM, and First Premier violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

91. The Experian, Equifax, and TransUnion provided notice to Celtic, Mission Lane, PerPay, TBOM, and First Premier that Plaintiff was disputing the inaccurate and misleading information, but Celtic, Mission Lane, PerPay,

TBOM, and First Premier failed to conduct a reasonable investigation of the information.

92. Based on Plaintiff's dispute, Celtic, Mission Lane, PerPay, TBOM, and First Premier all should have known its accounts were included in Plaintiff's Chapter 7 discharge.

93. The most basic investigation would include a simple review of well-established credit reporting industry standards.

94. Plaintiff alleges Celtic, Mission Lane, PerPay, TBOM, and First Premier did not review well established industry standards for credit reporting.

95. If Celtic, Mission Lane, PerPay, TBOM, and First Premier had reviewed such standards Celtic, Mission Lane, PerPay, TBOM, and First Premier would have seen its reporting was not in compliance and consequently inaccurate and or incomplete.

96. Such an investigation would be unreasonable.

97. Plaintiff also alleges that Celtic, Mission Lane, PerPay, TBOM, and First Premier did not investigate whether Plaintiff filed for bankruptcy and whether a discharge was entered.

98. The lack of investigation is unreasonable.

99. Plaintiff further alleges that Celtic, Mission Lane, PerPay, TBOM, and First Premier has not properly trained those directly investigating disputes on Metro 2 generally or credit reporting industry standards and as such have developed reckless policies and procedures.

**Experian and Equifax – Failure to Reinvestigate Disputed Information.**

100. Plaintiff re-alleges and incorporate herein the allegations in each and every paragraph above as though fully set forth herein.

101. After Plaintiff disputed the accounts mentioned above, Experian and Equifax were required to conduct a reasonable investigation and to delete any information that was not accurate under 15 U.S.C. § 1681i-(a)1.
102. Experian and Equifax all failed to conduct a reasonable investigation and failed to correct the misleading and or inaccurate statements on the account within the statutory time frame or at all.
103. Experian and Equifax could not have possibly done any type of reasonable investigation into this matter as Plaintiff explicitly explained that the Celtic, Mission Lane, PerPay, TBOM, and First Premier account should be reporting as included/discharged in bankruptcy rather than past-due with a balance owed.
104. Plaintiffs allege that Experian and Equifax have its own independent duty to conduct a reasonable investigation 15 U.S.C. §1681i-(a)1.
105. Experian and Equifax are not passive entities bound to report whatever information furnishers such as Celtic, Mission Lane, PerPay, TBOM, and First Premier all provide.
106. Given the aforementioned, Plaintiff alleges that Experian and Equifax can and do suppress inaccurate information from being reported when data-furnishers provide inaccurate information.
107. Experian and Equifax can and do instruct data-furnishers on how to properly report certain accounts from time to time upon request from the furnisher.
108. Experian and Equifax failed to conduct a reasonable investigation because any basic investigation would have included a review of Plaintiff's dispute letters.
109. Experian and Equifax intentionally, willfully or with reckless disregard for Plaintiff's accuracy did no investigation whatsoever given that

Experian and Equifax's general policy is to simply parrot whatever information a data furnisher sends.

110. Such policy and procedure inherently leads to inaccurate information being reported and therefore such an investigation is wholly unreasonably and reckless i.e. willful.

## THIRD CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendants Experian and Equifax)

**Experian and Equifax– Failure to Review and Consider All Relevant Information.**

111. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

112. Experian and Equifax violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

113. As a result of Experian and Equifax's violation of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

114. The violations by Experian and Equifax were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

115. In the alternative Experian and Equifax were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

116. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## FOURTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendants Experian and Equifax)

**Experian and Equifax– Failure to Delete Disputed and Inaccurate Information.**

117. Plaintiff re-alleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

118. Experian and Equifax violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

119. As a result of Experian and Equifax's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

120. The violations by Experian and Equifax were willful, rendering it individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

121. In the alternative, Experian and Equifax were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

122. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a trial by jury for all issues of fact triable by jury.

Wherefore, Plaintiff prays for judgment as hereinafter set forth.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n

2. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;

3. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o;

4. For determination by the Court that Defendants' policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and

5. For determination by the Court that Defendants' policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

Gale, Angelo, & Johnson, P.C.

Dated: November 20, 2024

*/s/ Elliot Gale*
Elliot Gale
Attorney for Plaintiff